UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KENT EMMETT HALL,<br><br>    Plaintiff,<br><br>vs.<br><br>DIRECTOR REINKE, WARDEN LITTLE, R. VALLEY, APRIL DAWSON, JENNIFER BREWER, BRISTY DELAO, AND MR. TAKAGE,<br><br>    Defendants. | Case No. 1:13-cv-00118-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

        Plaintiff, a prisoner in the custody of the Idaho Department of Correction (IDOC), is proceeding pro se in this civil rights action. Plaintiff alleges that Defendants have violated his Eighth Amendment right to be free from cruel and unusual punishment by their deliberate indifference and failure to provide adequate healthcare for his Hepatitis C condition. All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 25.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

        Having carefully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the

**MEMORANDUM DECISION AND ORDER - 1**

decisional process would not be significantly aided by oral arguments.  Therefore, the Court will decide the matter on the written motions, briefs and record.  D. Idaho L. Civ. R. 7.1(d).

## BACKGROUND

Plaintiff first filed this action on March 13, 2013 alleging that Defendants were deliberately indifferent in responding to his medical needs.  (Compl. (Dkt. 3.))  The Court reviewed the Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A and twice required Plaintiff to file amended complaints before he could proceed.  (Initial Review Order (Dkt. 4.))  After review of the two Amended Complaints (Dkts. 9, 10) under 28 U.S.C. §§ 1915 and 1915A, Plaintiff was permitted to proceed only with his Eighth Amendment claim against Dr. April Dawson under his Amended Complaint (Dkt. 9.)   (*See* Order (Dkt. 12.))

Dr. Dawson has filed a Motion to Dismiss (Dkt. 20) for failure to exhaust administrative remedies as required by the Prisoner Litigation Reform Act.  This motion shall be construed as a motion for summary judgment, pursuant to the Court's notice of April 18, 2014.  (Dkt. 30.)

## STANDARD OF LAW

**1.     Summary Judgment**

Summary judgment is appropriate where a party can show that, as to a particular claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported

claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute...will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to the failure of any *material* fact essential to the non-movant's case to warrant summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d

**MEMORANDUM DECISION AND ORDER - 3**

885, 889 (9th Cir. 2003).

If the moving party meets that task, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).[1] Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set

---

[1] In determining admissibility for summary judgment purposes, it is the content of the evidence rather than its form that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003). If the contents of the evidence could be presented in an admissible form at trial, those contents may be considered on summary judgment even if the evidence itself is hearsay. *Id.* (affirming consideration of hearsay contents of plaintiff's diary on summary judgment because at trial, plaintiff's testimony would not be hearsay).

**MEMORANDUM DECISION AND ORDER - 4**

forth by the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

2. **Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[2] prisoners are required to exhaust all available administrative remedies within the prison system before they pursuing such claims in a civil rights lawsuit challenging the conditions of their confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials

---

[2] Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*

**MEMORANDUM DECISION AND ORDER - 5**

should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have the right to bring motions addressing exhaustion of administrative remedies at the very beginning of litigation, and "disputed factual questions relevant to exhaustion[,] should be decided at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

Failure to exhaust is an affirmative defense under Federal Rule of Civil Procedure 12(b)(6), and can be raised in a motion to dismiss for failure to state a claim if the prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 747 F.3d at 1166. However, when either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be brought as, or converted into, a motion for summary judgment under Rule 56. *Id.* at 1170. "If the record is sufficiently developed to permit the trial court to consider summary judgment, and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion," the Court may enter summary judgment for either the moving or the nonmoving party, including on the court's own motion. *Id.* at 1176; *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.")

In general, however, Rule 56 precludes the resolution of genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual

**MEMORANDUM DECISION AND ORDER - 6**

questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving a prisoner's failure to exhaust the available administrative remedies. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Confusing or contradictory information given to a prisoner "informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at

**MEMORANDUM DECISION AND ORDER - 7**

937. Administrative remedies are deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed a grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1173.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

### 3. Material Facts and Disputes

The facts material to the administrative exhaustion question are included within the sections below. The steps required to complete the IDOC Grievance Process, which are published in the prison policy manual, are undisputed. Where the facts concerning whether the exhaustion process was properly completed or whether an excuse for failure to complete the process are in dispute, the Court has so noted in the discussion section below.

## DISCUSSION

### 1. IDOC's Grievance Procedure

The IDOC's grievance process consists of three stages. First, an inmate with a concern is required to seek an informal resolution by filling out an Offender Concern Form, addressed to an appropriate staff member. (Pavelec Aff., ¶¶ 4-5 (Dkt. 20-2.)) If the issue cannot be resolved informally through the use of a Concern Form, the inmate must

**MEMORANDUM DECISION AND ORDER - 8**

then file a Grievance Form.  (*Id*. at ¶ 6.)

A Grievance Form must be submitted within 30 days of the incident giving rise to the grievance.  When submitting a Grievance Form, the inmate must attach a copy of the Offender Concern Form, showing the inmate's attempt to settle the issue informally.  Grievances must contain "specific information including nature of the complaint, dates, places, and names," and only one issue may be raised in each grievance.  (*Id*. at ¶¶ 6-7.)  When the Grievance Coordinator receives an inmate grievance, the information concerning the grievance is entered  "into the Corrections Integrated System (CIS)," an electronic database used to track inmate grievances.  (*Id*.)  The Grievance Coordinator then assigns the grievance "to the staff member most capable of responding to and, if appropriate, resolving the issue."  (*Id*.)  That staff member responds to the grievance and returns it to the Grievance Coordinator.  The Grievance Coordinator then forwards the grievance to a "reviewing authority," typically a deputy warden.  (*Id*.)

The reviewing authority returns the grievance to the Grievance Coordinator, who logs the response into the database and sends the completed grievance back to the inmate.  (*Id*.)  If  the grievance involves a medical issue, the grievance is routed through medical staff who are employed by the health care contractor and may include a health services administrator.  (*Id*. ¶ 8.)

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision.  (*Id*. at ¶ 9.)  That appeal is usually decided by the facility head.  If it is a medical grievance, the facility's healthcare service administrator is the reviewing

**MEMORANDUM DECISION AND ORDER - 9**

authority and the health authority is the appellate authority. (*Id*. at ¶ 10.) This "appellate authority" must review the appeal within 16 days. After the appeal is decided, the Grievance Coordinator returns the completed appeal form to the inmate. (*Id*.)

Not until the completion of all three of these steps— Concern Form, Grievance Form, and grievance appeal— is the grievance process exhausted. (*Id*. at ¶ 11.)

**2.    Hall Did Not Exhaust His Available Administrative Remedies**

According to SICI[3] and Plaintiff's grievance records, Plaintiff filed two medical grievances while at SICI. The first (SI 120000193) complained of pill call, nothing to do with Plaintiff's Hepatitis C treatment, and was never exhausted. (Pavelec Aff., Ex. H (Dkt. 20-8.)) The second (SI 130000043) stated Plaintiff talked to Dr. Dawson about his Hepatitis C ("interfearon") treatment. (*Id*.) The grievance was returned to Plaintiff with the information that Plaintiff did not properly complete the grievance. It was never exhausted. (*Id*.)

Plaintiff filed four grievances while at ISCI, three of which were received on January 28, 2014. One (II 140000131) mentioned his liver condition and complained about who was responding to his grievances. It was fully exhausted. A second (II 140000139) addressed a complaint about his medication and also was fully exhausted. A third (II 140000129) mentions that Dr. Dawson is no longer at ISCI and that Plaintiff's liver is "working at 10%." This grievance was fully exhausted. (Pavelec Aff., Ex. H.) In

---

[3] Plaintiff was housed at SICI and CAPP from April 13, 2012 until July 23, 2013. Since then, he has been housed at ISCI. (Pavelec Aff., Ex. F (Dkt. 20-6.))

response to Defendant's motion to dismiss, Plaintiff submitted a fourth grievance filed on March 14, 2014 (II 140000342) that complained about his shoes. This grievance was also fully exhausted. (Dkt. 31-2, pp. 27-28.)

The two grievances filed prior to this lawsuit were not fully exhausted. The four grievances filed at ISCI were fully exhausted *after* the complaint, and the second amended complaint, were filed in this case. Plaintiff's Complaint was filed on March 13, 2013 (Dkt. 3) and his Amended Complaint was filed on July 8, 2013 (Dkt. 9). These grievances were not filed until January of 2014, at the earliest. Additionally, these grievances do not mention Dr. Dawson, other than noting the fact that Dr. Dawson was no longer at ISCI.

A claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit. *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014). Plaintiff's grievances were not exhausted prior to the filing of his Complaint or Amended Complaint. Therefore, Defendant has met the burden of showing that Plaintiff did not exhaust his administrative remedies.

In his response, Plaintiff attaches multiple documents, including the four grievances filed in 2014. He also attaches health services request forms, offender concern forms (most of which are from 2014 and illegible), medical request disposition/response forms, a parole notice, medical documents from 2007, filings from this case, and an 11-page document written by Plaintiff that details his allegations of deliberate indifference. These documents do not provide a basis for concluding that Plaintiff did exhaust his

**MEMORANDUM DECISION AND ORDER - 11**

adminstrative remedies, or that he should be excused from being required to do so, or create a genuine issue of material fact as to whether he properly exhausted his administrative remedies. Accordingly, the Court will grant summary judgment for Defendant Dawson and dismiss the claims without prejudice.

Nonetheless, Plaintiff may have a proper remedy to further pursue for any newer or ongoing medical problems that (1) have been fully exhausted, and (2) are within the two-year statute of limitations period. Plaintiff may file a new lawsuit for any such claims. If he does, he should take care to include the proper defendants, such as current health care providers who are responsible for his ongoing medical issues.

Even though this case will be dismissed, and Plaintiff will need to bring a new lawsuit to pursue other claims should he choose to do so, such a result is the appropriate application of the exhaustion rule, which is based in turn upon the important policy concern that prison officials should be given an opportunity to resolve disputes with prisoners without court intervention, if at all possible. When Congress enacted the law requiring exhaustion, it intended to provide an incentive for all prisoners to first try the administrative remedy system to resolve their problems with prison officials, rather than burden the courts and the taxpayers with the task of resolving all such issues in litigation.

3. **Plaintiff's Motion to Inform Court of Plaintiff's Condition and Drs. Care (Dkt. 33)**

On July 7, 2014, Plaintiff filed a "motion" which does not seek any relief but instead states that he needs a liver transplant and that he is dying. Presumably, he

contends that his rights are being infringed in some manner in connection with the allegations he raises in his fiilng.  However, he must bring any such claims in a new and separate lawsuit, if he exhausted his administrative remedies prior to the filing of the new lawsuit. If he contends that he is need of urgent or emergency judicial relief, he may file a motion for a preliminary injunction with his new lawsuit.

To be entitled to preliminary injunctive relief, the movant must show each of the following: (1) a likelihood of success on the merits; (2) that irreparable harm is likely, not just possible, if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008). In applying the *Winter* test, the United States Court of Appeals for the Ninth Circuit has instructed that, if a party cannot show a likelihood of success on the merits, but raises "serious questions going to the merits," a preliminary injunction may issue if the balance of equities tips "sharply" in the party's favor, and the other two elements (irreparable harm and public interest) are also satisfied. *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (holding that this aspect of the Ninth Circuit's sliding scale test survived *Winter*).

Plaintiff should provide detailed facts in any such subsequent filing about his current treatment, and the response of prison medical providers to his contention that he is in need of a liver transplant and is dying. Plaintiff may also want to attach medical records to show his current treatment, or the lack thereof.

**MEMORANDUM DECISION AND ORDER - 13**

# ORDER

**IT IS HEREBY ORDERED:**

1) Dr. Dawson's Motion to Dismiss for Failure to Exhaust Administrative Remedies (Dkt. 20) is GRANTED. The Eighth Amendment claim against Dr. Dawson is DISMISSED without prejudice.

2) Plaintiff may bring a new lawsuit that includes only those claims that were fully exhausted in the prison administrative grievance process before the filing date of the lawsuit, if he is within the appropriate statute of limitations period for the claims.

3) Plaintiff's Motion to Inform Court (Dkt. 33) is DENIED as MOOT, without prejudice to raise the issues referenced in such motion in the form of a new lawsuit.

DATED: **September 25, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge